UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Irwin Muskat and Margery Muskat

    v.                            Civil No. 06-cv-30-JD
                                      Opinion No. 2007 DNH 091

United States of America

O R D E R

Irwin and Margery Muskat brought suit seeking a refund of
taxes paid in 1998 on proceeds from the sale of their business,
Jac Pac Foods, Ltd., to Manchester Acquisition Corporation
("MAC"), a subsidiary of Corporate Brand Foods America, Inc.  The
Muskats contend that they mistakenly characterized $1,000,000
paid to them by MAC in the course of the transaction as ordinary
income when it was instead a payment for Irwin Muskat's goodwill,
which should have been taxed as a long-term capital gain.  As a
result, they argue, they overpaid their income taxes in 1998 by
$203,434.  The United States disagrees and moves for summary
judgment.

Standard of Review

Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.

## Background

Jac Pac Foods, Ltd. was a meat processing, marketing, and distributing business in Manchester, New Hampshire, founded by Irwin Muskat's grandfather in 1933.  By 1998, Irwin was the president and chief executive officer of Jac Pac and owned 37% of the stock in the company.  On March 31, 1998, MAC and Jac Pac entered an Asset Purchase Agreement ("APA"), in which they agreed to the terms of the sale of Jac Pac to MAC.  The APA required Irwin to sign employment, noncompetition, and subscription agreements, which he did on May 7, 1998, when the transfer of Jac Pac to MAC occurred.

2

The APA included "Exhibit B, Purchase Price Allocation, Tax Purposes."  Under Exhibit B, payment for the noncompetition agreement was $3,995,599 and payment for goodwill was $15,908,511.  Under the noncompetition agreement, the $3,995,599 was to be paid to Irwin in separate amounts of $1,000,000 upon signing, $955,599 in annual installments for three years, and $2,000,000 in 120 monthly installments.  As agreed, MAC paid Irwin $1,000,000 on May 7, 1998, when he signed the noncompetition agreement.

The Muskats then included the $1,000,000 as ordinary income on their tax return for 1998.  In 2002, they filed an amended return declaring the $1,000,000 as a long-term capital gain. They contend that they have overpaid their income tax by $203,434 because of erroneously including the $1,000,000 in ordinary income.

## Discussion

The United States moves for summary judgment on the ground that the allocation for tax purposes in Exhibit B to the APA establishes that the $1,000,000 payment was made under the noncompetition agreement, making that amount taxable as ordinary income.  The United States relies on 26 U.S.C. § 1060, which provides allocation rules for certain asset acquisitions.  The

Muskats argue that the $1,000,000 was paid in exchange for
Irwin's goodwill, not as compensation for the noncompetition
agreement, and therefore, should have been taxed as a long-term
capital gain.  The Muskats contend that § 1060 does not apply to
them or to the noncompetition agreement because they are not
parties to the APA.

"If in connection with an applicable asset acquisition, the
transferee and transferor agree in writing as to the allocation
of any consideration, . . . such agreement shall be binding on
both the transferee and transferor unless the Secretary
determines that such allocation . . . is not appropriate."  §
1060(a).  An applicable asset acquisition is "any transfer
(whether directly or indirectly) (1) of assets which constitute a
trade or business, and (2) with respect to which the transferee's
basis in such assets is determined wholly by reference to the
consideration paid for such assets."  § 1060(c).  Under the
pertinent regulation in effect at the time of the sale of Jac
Pac, the transferor was the seller of the assets and the
transferee was the purchaser of the assets.  26 C.F.R. § 1.1060-
IT(a) (1998).  In determining whether assets being sold
constitute a trade or business for purposes of § 1.1060-IT, all
of the circumstances are to be considered including "[r]elated
transactions, including . . . covenants not to compete,

employment contracts,  . . . or other similar agreements between
the purchaser and seller (or managers, directors, owners, or
employees of the seller) in connection with the transfer."  §
1.1060-1T(b)(2).

There appears to be no dispute the sale of Jac Pac to MAC
constituted an applicable asset acquisition within the meaning of
§ 1060.  The APA establishes that Jac Pac was the "Seller" and
MAC was "the Purchaser."  APA § 2.2.  The APA identifies Irwin
Muskat as "the president and chief executive officer of Seller."
Id.  Irwin Muskat signed the APA on behalf of Jac Pac.

The APA allocated the purchase price into categories for tax
purposes.  APA § 1.6, Exhibit B.  MAC's obligations under the APA
were contingent upon certain listed conditions precedent,
including that Irwin Muskat would sign and deliver a
noncompetition agreement that was mutually satisfactory to him
and to MAC.  APA § 6.1(o).  The noncompetition agreement was
signed and delivered as promised and provided for payment to
Irwin of $1,000,000 on the date of signing and other amounts in
installments for a total of $3,955,599.  The agreed allocation
listed $3,955,599 as allocated to "Non-Compete."

The parties disagree as to whether § 1060 applies to the
Muskats.  The United States asserts that because Irwin Muskat's
noncompetition agreement was part of the transaction of selling

5

Jac Pac, § 1060 applies to him and to that agreement.  The
Muskats contend that as non-parties to the APA, they are not
bound by the allocation in Exhibit B.

On its face, § 1060 applies to determine the transferee's
basis and the transferor's gain or loss in an applicable asset
acquisition.  § 1060(a).  The Muskats were neither the transferor
nor the transferee in the asset acquisition transaction governed
by the APA.  Although the noncompetition agreement was part of
that transaction, Jac Pac was the transferor under the terms of
the APA.  The APA and Exhibit B are binding as to the allocation
of the transferred assets for tax purposes pertaining to Jac Pac
and MAC.  Because the Muskats were not the transferors for
purposes of the APA, however, § 1060 does not apply to them.

The United States moved for summary judgment based on the
application of § 1060.  Although other issues are suggested, such
as whether extrinsic evidence may be used to show the parties'
intent in entering the noncompetition agreement, only the
application of § 1060 is addressed in this order.  Whether or not
payments made to Irwin Muskat under the noncompetition agreement
can be allocated to another purpose remains in dispute.

<u>Conclusion</u>

For the foregoing reasons, the defendant's motion for summary judgment (document no. 12) is denied.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

July 25, 2007

cc:   James E. Higgins, Esquire
      Robert J. Kovacev, Esquire
      John-Mark Turner, Esquire
      Karen Wozniak, Esquire

7