UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Irwin and Margery Muskat

   v.                                      Civil No. 06-cv-30-JD
                                            Opinion No. 2008 DNH 005

United States of America

O R D E R

Irwin and Margery Muskat seek a refund of income taxes paid in 1998 on compensation Irwin Muskat received from Manchester Acquisition Corporation ("MAC") as part of the transaction involving the sale of the Muskats' business, Jac Pac Foods, Ltd., to MAC.  The Muskats contend that they mistakenly characterized a $1,000,000 payment under Irwin's noncompetition agreement as ordinary income when it was actually payment for Irwin's personal goodwill and should have been taxed at the long term capital gain rate.  They contend that as a result of the mistake, they overpaid their income taxes in 1998 by $203,434 and seek a refund pursuant to 26 U.S.C. § 7422.  The United States contends that the payment was properly taxed as ordinary income.

In anticipation of trial, which is scheduled to begin on January 23, the parties have filed trial briefs and requests for findings of fact and rulings of law.  The United States moves for leave to designate a rebuttal expert witness or, alternatively,

to limit the Muskat's expert witness testimony to opinions set forth in his report.  The United States also moves to exclude irrelevant evidence, extrinsic evidence, and certain testimony by the Muskats' expert witness.  The Muskats object to the motions.

I.  Applicable Standard

   A taxpayer seeking a refund of income taxes bears the burden of showing that the IRS's assessment was wrong.  Webb v. I.R.S., 15 F.3d 203, 205 (1st Cir. 1994).  The parties dispute the applicable standard for determining whether the $1,000,000 paid to Irwin Muskat under the noncompetition agreement was compensation for that agreement or, instead, was compensation for a sale of Irwin's personal goodwill.

   The United States argues that because Muskat and MAC agreed in the noncompetition agreement that the $1,000,000 payment was consideration for that agreement, Muskat must provide "strong proof" that they made an ancillary agreement that the payment was for Irwin Muskat's personal goodwill.  See Harvey Radio Labs., Inc. v. Comm'r of Internal Revenue, 470 F.2d 118, 120 (1st Cir. 1972) (following Leslie Ray Ins. Co. v. United States, 463 F.2d 210, 212 (1972)).  The Muskats contend that the "strong proof" rule does not apply because Irwin Muskat was not a party to the Asset Purchase Agreement ("APA"), in which Jac Pac and MAC

allocated, for tax purposes, $15,908,511 as payment for goodwill, because the policy supporting the "strong proof" rule, which is to avoid the "whipsaw" effect of contradictory tax positions, does not apply in this case, and because the agreements are ambiguous.  Instead, the Muskats argue that the "economic reality" test applies.

In Leslie Ray Ins. Co. v. United States, 463 F.2d 210, 212 (1972), the First Circuit considered the "Danielson rule" and the "strong proof" rule but chose neither, concluding that the plaintiff failed to allege that tax allocation was even considered as part of the sales transaction.  In Harvey Radio Labs., Inc. v. Comm'r of Internal Revenue, 470 F.2d 118, 120 (1st Cir. 1972), however, the First Circuit addressed the unresolved issue in Leslie Ray and held that "strong proof" was required for a taxpayer to vary an explicit or implied allocation of payment in an agreement.  Id. at 119.  The First Circuit rejected the "economic reality" test on behalf of a taxpayer, although not for the Commissioner when challenging the taxpayer's allocation.  Id. at 120.  The court did not explicitly reject the "Danielson rule" ("when the agreement of the parties specifically allocates a part of the purchase price to a covenant not to compete, the parties cannot, absent fraud, mistake, or duress, adduce parol evidence to support tax treatment inconsistent with the terms of the

agreement") but declined to "push to the extreme of that rule" or to decide if that rule differed from the "strong proof" rule. Id. The First Circuit has not addressed this issue since 1972.

Although the precedent is old, the First Circuit adopted the "strong proof" rule and explicitly rejected the "economic reality" test for purposes of a taxpayer's challenge to a tax decision. Harvey Radio, 470 F.2d at 119-120. In addition, the court held that the "strong proof" rule applies even where the policy concerns about the "whipsaw" effects of conflicting tax consequences do not pertain. Id. The Muskats' argument that the "strong proof" rule does not apply when the agreement is ambiguous is not well-developed or persuasive. Therefore, the "strong proof" rule is the standard that will be applied in this case. Contrary to the United States's argument, however, "strong proof" is not limited to evidence of other or ancillary agreements but instead is "a rule of intention." Harvey Radio. 470 F.2d at 120. To prevail, the Muskats must show by "strong proof" that Irwin Muskat and MAC intended that the disputed $1,000,000 payment under the noncompetition agreement to be compensation for Irwin's personal goodwill and not for the promises made in the noncompetition agreement.

II.  <u>Motion for Leave to Designate an Expert Witness or to Limit Expert Witness Testimony</u>

The United States contends that the Muskats' expert witness, George T. O'Brien, disclosed only three opinions in his expert report but then offered nine opinions during his deposition. In its motion, the United States asked for leave to designate its own expert to rebut O'Brien's additional opinions or, alternatively, to limit O'Brien's testimony to his original three opinions. The Muskats argue that O'Brien has not added new opinions but, instead, merely expressed his existing opinions in different terms or phrasing during his deposition.

Parties are required to disclose their retained witnesses' expert opinions. Fed. R. Civ. P. 26(a)(2)(B). Any changes in an expert's disclosed opinions must be disclosed through supplementation. Fed. R. Civ. P. 26(e); <u>Macaulay v. Anas</u>, 321 F.3d 45, 50 (1st Cir. 2003). Ordinarily, the sanction for noncompliance, in the absence of substantial justification, is mandatory preclusion of nondisclosed opinions. Fed. R. Civ. P. 37(c)(1); <u>Santiago-Diaz v. Laboratorio Clinico Y De Referencia</u>, 456 F.3d 272, 276 (1st Cir. 2006).

Several of the nine opinions given by O'Brien during his deposition and cited as new opinions by the United States are simply his observations about the circumstances of the sales

5

transaction between Jac Pac and MAC, which are not matters of expert opinion.  At the final pretrial conference, counsel for the United States argued that O'Brien disclosed his opinion that the noncompetition agreement was "related to" Irwin Muskat transferring his goodwill in Jac Pac to MAC but then changed that opinion at his deposition to say that the noncompetition agreement was a "sale of" Irwin Muskat's personal goodwill.  At least in the excerpt of deposition testimony quoted by the United States in its motion, O'Brien only said that the noncompetition agreement was related to the purchase of Irwin's goodwill.  Although the language used is slightly different, the opinion appears to be the same.

The United States has not shown that O'Brien offered new or materially changed opinions during his deposition.  As counsel agreed at the final pretrial conference, however, O'Brien's testimony at trial will be limited to the opinions he disclosed in his report.  The motion is denied.

III.  <u>Motion to Exclude</u>

The United States moves to exclude all evidence pertaining to the noncompetition agreement as irrelevant because the witnesses' deposition testimony establishes that there was no ancillary agreement or deal between the parties to establish that

6

the payment under the noncompetition agreement was for Irwin Muskat's personal goodwill.  The United States also moves to exclude O'Brien's testimony on the grounds that his opinions are not relevant or reliable and that he is not qualified to give opinions based on the Multiattribute Utility Model ("MUM") that he used.  The Muskats oppose the motion, arguing that the United States's reliance on the "strong proof" rule is wrong, in the alternative that their evidence is relevant under that rule, and that O'Brien's opinions are admissible.

As is discussed above, the "strong proof" rule is the standard that will be applied in this case.  Under that rule, however, relevant evidence is not as limited as the United States argues.  Instead, admissible evidence of the parties' intent with respect to the payment of $1,000,000 to Irwin Muskat under the noncompetition agreement is relevant to whether "strong proof" exists to support the Muskats' theory that the payment was intended to be for Irwin's personal goodwill.

O'Brien's expert report provides his analysis of the comparative value of Irwin Muskat's personal goodwill and Jac Pac's enterprise goodwill based on certain listed factors and the percentages attributed to each factor by Irwin Muskat and Charles Hungler, "former Senior Vice President of Finance."  O'Brien used the "Multiattribute Utility Model" or MUM analysis for that

calculation.  Based on the MUM analysis, which in turn is based on the percentages attributed to each factor by Muskat and Hungler, O'Brien concluded that 73.06% of the goodwill in the transaction was related to Muskat while 26.94% was related to Jac Pac.  O'Brien then reviewed the parties' allocation of the proceeds for the transaction on an IRS form and noted that $15,908,511 was allocated to goodwill.  He summarized the provisions of the noncompetition agreement and noted that Muskat was to receive a total of $3,955,599, with a $1,000,000 payment on signing and the remainder in specified installments, in consideration for the noncompetition agreement.

   Based on that information, O'Brien made a finding that MAC recognized the importance of Irwin Muskat to the value of Jac Pac.  O'Brien also noted the agreement that Muskat would invest in MAC's parent company and Muskat's employment agreement with MAC.  O'Brien stated his opinion that the investment and employment agreements "more that [sic] restricted and rewarded Mr. Muskat for protecting company and transferring personal Goodwill."  Without further explanation, O'Brien then applied his MUM analysis results to the amount allocated under the APA to goodwill for tax purposes by Jac Pac and MAC, $15,908,511, and concluded that $11,622,758 was attributable to Muskat's personal goodwill while $4,285,753 was attributable to Jac Pac's goodwill.

8

The report then considered a different allocation based on a percentage of revenues from customers, which resulted in a lower amount of goodwill being allocated to Muskat.

O'Brien stated that the "incentive program" was added to the Jac Pac and MAC transaction in November of 1997 to provide substantial additional payments to Muskat.  O'Brien gave his opinion that the stock subscription and employment agreements "cemented Mr. Muskat's commitment and obligation to protect Jac Pac's Enterprise Goodwill."  He also stated that the noncompetition agreement "was related to Mr. Muskat's providing a transfer of his Personal Goodwill which, according to his and others' representations, he actively did as a condition prior to sale and on a timely basis thereafter."

The opinions O'Brien provides in his report and their relevance to the issue in this case are opaque at best.  In particular, no apparent link exists between the $15,908,511 that MAC and Jac Pac allocated as a payment for goodwill under the APA and the $3,955,599 total amount paid to Muskat by MAC under the noncompetition agreement or the $1,000,000 part of that payment that is at issue here.  Muskat was not a party to the APA and no mention is made in the APA allocation of Muskat's personal goodwill or of the noncompetition agreement.  Based on the information that is currently before the court, O'Brien's

9

allocation of the $15,908,511 amount between Muskat's personal goodwill and Jac Pac's enterprise goodwill appears to have no relevance to the issue in this case.

As was discussed at the final pretrial conference, O'Brien will not be permitted to testify about the meaning or purpose of any of the agreements involved in the Jac Pac and MAC transaction.  In addition, he will not testify about the intent of the parties with respect to those agreements and transactions.  The relevance and admissibility of O'Brien's testimony about his valuation of different aspects of the Jac Pac and MAC transaction would be better assessed in the context of trial.

The United States also challenges O'Brien's qualifications to make the valuations he presents.  The Muskats will be afforded an opportunity to qualify O'Brien prior to his testimony, and the United States will have an opportunity to cross-examine.  A ruling on whether O'Brien is qualified to give his opinions based on the "MUM" analysis, under Federal Rule of Evidence 702, will be made at that time.

## Conclusion

For the foregoing reasons, the defendant's motion for leave (document no. 20) is denied.  The defendant's motion to exclude (document no. 29) is granted to the extent that the plaintiffs' expert witness will not be permitted to testify about the meaning or purpose of the various agreements in this case or about the intent of the parties and is otherwise denied without prejudice to make appropriate objections at trial.  The question of the qualification of the plaintiffs' expert witness will be determined at trial.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 10, 2008

cc:  Nathaniel J. Dorfman, Esquire
     James E. Higgins, Esquire
     Robert J. Kovacev, Esquire
     T. David Plourde, Esquire
     John-Mark Turner, Esquire
     Karen Wozniak, Esquire